*Notice: This order is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

# In the Supreme Court of the State of Alaska

In the Disciplinary Matter Involving:

**Joshua M. Kindred,**

Respondent.

**ABA File No. 2024D147**
**ABA Member No. 0511105**

Supreme Court No. **S-19587**

**Order**

Order No. 127 – November 7, 2025

Before: Carney, Chief Justice, and Borghesan and Pate, Justices. [Henderson and Oravec, Justices, not participating.]

Bar Counsel for the Alaska Bar Association submitted its recommendation for disbarment and record of disciplinary proceedings under Alaska Bar Rule 22(n) for review by the Supreme Court pursuant to Alaska Bar Rule 22(r). Having reviewed the record *de novo*, we adopt the findings and conclusions of the Disciplinary Board.[1] Exercising our independent judgment as to the appropriate sanction in this matter,

**IT IS ORDERED**:

1. **Joshua M. Kindred** is disbarred from the practice of law in Alaska effective immediately.

---

[1] The Area Hearing Committee's Recommendation and the Disciplinary Board's Findings, Conclusion, and Recommendation are attached as an appendix to this order.

2. Pursuant to the schedule provided in Alaska Bar Rule 16(c)(3), Mr. Kindred will pay $1,000 in costs and attorney's fees to the Alaska Bar Association within 60 days of entry of this order.

3. Mr. Kindred must make full restitution of any amounts owed to the Lawyer's Fund for Client Protection, the Alaska Bar Association, and to all clients for any fee arbitration awards that remain unpaid or that are ordered to be paid prior to seeking reinstatement.

4. Prior to his seeking reinstatement to the practice of law in Alaska, Mr. Kindred will certify to Bar Counsel that he has earned at least 15 credit hours of continuing legal education in the area of ethics, law office management, and management of law office accounts.

5. Mr. Kindred, upon seeking reinstatement, will follow reinstatement procedures outlined in Alaska Bar Rule 29(c)(1)-(4).

Entered at the direction of the court.

Clerk of the Appellate Courts

Meredith Montgomery

Distribution:

BEFORE THE ALASKA BAR ASSOCIATION
DISCIPLINARY BOARD

In the Disciplinary Matter )
Involving )
 )
JOSHUA M. KINDRED, )
Respondent. )
 )

ABA File No. 2024D147
ABA Member No. 0511105

ALASKA BAR ASSOCIATION
Filed and Entered on

AUG 25 2025

Pursuant to the Rules of
Disciplinary Enforcement
Received By

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF DISCIPLINARY BOARD

This disciplinary matter came before the Disciplinary Board of the Alaska Bar Association on August 21, 2025. The Board, having considered the report of the Area Hearing Committee filed June 24, 2025, hereby

ADOPTS the findings, conclusions and recommendation of the Area Hearing Committee contained in that report as its findings, conclusions and recommendation in this matter, except:

The Board declines to adopt footnote 2 on page 2 of the Area Hearing Committee report.

DATED this 22nd day of August, 2025, at Anchorage, Alaska.

_Rebecca Patterson_
Rebecca Patterson
President
Disciplinary Board

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501

(907) 272-7469
FAX (907) 272-2932

ALASKA BAR ASSOCIATION
Filed and Entered on

**JUN 2 4 2025**

Pursuant to the Rules of
Disciplinary Enforcement
Received By

BEFORE THE ALASKA BAR ASSOCIATION
AREA HEARING COMMITTEE
THIRD JUDICIAL DISTRICT

In the Disciplinary Matter Involving

Joshua M. Kindred

Respondent.

ABA Membership No. 0511105
ABA File No. 2024D147

## AREA HEARING COMMITTEE RECOMMENDATION
### FOR DISCIPLINARY SANCTION

A Petition for Formal Hearing was filed on January 31, 2025 against

Anchorage Attorney Joshua M. Kindred. Mr. Kindred resigned his position as a Judge of

the Federal United States District Court of Alaska July 3, 2024 effective July 8, 2024. At

the time of the ABA filing of its Petition Joshua M. Kindred was an inactive member of

the Alaska Bar. The petition requesting a formal hearing on issues of misconduct

contained in the aforesaid Petition are deemed admitted by reason of Joshua Kindred's

failure to answer the petition requesting a formal hearing. An Order deeming the charges

in the petition admitted pursuant to Alaska Bar Rule 22(e ) issued March 13, 2025 by

Executive Director Danielle Bailey of the Alaska Bar Association. The ABA Petition for

Formal Hearing is marked Exhibit A. The ABA Order Deeming Charges admitted is

marked Exhibit B.

1

Area Discipline Division Members Todd Young, Krystal Hunter, and Tayva Taylor, were assigned to an Area Hearing Committee to hear this matter. In accord with Bar Rule 26(g), a formal hearing solely to determine the extent of the final discipline to be imposed was held on June 16, 2025 at the Office of the Alaska Bar Association, 840 K Street, Suite 100, Anchorage, Alaska 99501.

Mr. Kindred was not present. Todd Young appeared in person at the ABA office's conference room. Area Discipline members Tayva Taylor and Krystal Hunter appeared on a zoom platform. Assistant Bar Counsel, Louise Driscoll appeared on behalf the Alaska Bar Association. Gail Welt appeared as clerk of the Area Hearing Committee and recorded the presentation of assistant bar counsel before the Area Discipline members broke into executive session to discuss the sanction issues in the case of Joshua M. Kindred.[1]

The facts of Joshua M. Kindred's misconduct are set forth in the Petition (Exhibit A). Based on the uncontested facts, the Committee agrees with, and adopts, the

---

[1] Joshua Kindred did not respond to the memorandum filed by Assistant Bar Counsel, Louise Driscoll. Ms. Driscoll emailed to the members of the Area Discipline Committee as well as to Mr. Kindred a memorandum addressing the issue of sanctions. A copy of the memorandum is Exhibit C.

[2] The Committee wants the Alaska Bar Association, The Board of Governors and Mr. Kindred to understand the committee is cognizant of the public embarrassment and presumptive personal pain and humiliation over the loss of the Federal Judgeship, the loss of a law license and the absence of income as a result of losing a law license. This Committee wants Mr. Kindred to have a pathway to return to obtaining a law license, assuming the necessary efforts are undertaken to show by clear and convincing evidence Mr. Kindred is rehabilitated and not a threat to the public after the requisite 5 year duration of time following disbarment has passed. We enter our decision not with any joy. It is our collective hope Mr. Kindred can recover emotionally, financially and physically notwithstanding the hardships Mr. Kindred confronts.

legal analysis set out in the Petition as well as in the Memorandum that disbarment is the appropriate sanction for Mr. Kindred's misconduct.[2] The Committee recommends Mr. Kindred pay the Bar Associations costs and fees assessment according to the schedule.[3]

Dated this 20th day of June, 2025 Anchorage, Alaska

*Todd Young*

Todd Young, Chair
Area Hearing Committee

Dated this __20th__ day of June, 2025 __Palmer__, Alaska

Tayva Taylor, Attorney Member
Area Hearing Committee

Dated this __23rd__ day of June 2025 __Anchorage__, Alaska

Krystal Hunter, Public Member
Area Hearing Committee

---

[3] Mr. Kindred made no showing of inability to pay the ABA's costs and fees. There is no showing of indigency on the part of Mr. Kindred.

In the Disciplinary Matter )
Involving )
)
    JOSHUA M. KINDRED, )
)
    Respondent. )
_____ )

ABA File No. 2024D147
ABA Member No. 0511105

**ALASKA BAR ASSOCIATION**
Filed and Entered on

**JAN 3 1 2025**

Pursuant to the Rules of
Disciplinary Enforcement
Received By


EXHIBIT
A
including Judicial

## PETITION FOR FORMAL HEARING

Bar Counsel, according to Alaska Bar Rule 25(d), has received approval

from the Board Discipline Liaison to file this petition. The Alaska Bar

Association, under Bar Rule 22(e), alleges:

### JURISDICTION AND VENUE

1.    The respondent, Joshua M. Kindred, is an inactive member of the

Alaska Bar Association, admitted to practice law by the Supreme Court of

Alaska. At the time of the misconduct, Kindred was serving as a District Judge

of the United States District Court of Alaska. He voluntarily resigned from his

position as a federal judge on July 8, 2024.

2.    Kindred is subject to the Alaska Rules of Professional Conduct

(ARPCs) and to the Alaska Bar Rules, Part II (Rules of Disciplinary

Enforcement), giving the committee jurisdiction to hear this matter.

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510

(907) 272-7469
FAX (907) 272-2932

In the Disciplinary Matter Involving Joshua M. Kindred
Petition for Formal Hearing – ABA File No. 2024D147        Page 1 of 16

## BACKGROUND FACTS

3. In November 2022, the Chief Circuit Judge of the Ninth Circuit received information about possible sexual misconduct by Kindred.[1]

4. After a limited inquiry, the Chief Circuit Judge identified a complaint of judicial misconduct against Kindred under 28 U.S.C. § 351(b).

5. The complaint alleged that Kindred: (1) created a hostile work environment for judicial employees by subjecting them to frequent discussions about his personal life, including conversations of a sexual nature; (2) engaged in unwanted sexual conduct, both physical and verbal, towards a former judicial employee; and (3) told individuals with knowledge of the potential misconduct to remain silent about any allegations.

6. Kindred offered his "unequivocal denials"[2] to the allegations and stated that communications he possessed would show the lack of merit in the allegations.

7. On February 3, 2023 the Chief Circuit Judge appointed a Special Committee of several circuit judges to investigate the reasonably disputed issues. The Special Committee retained outside counsel and an outside investigator to assist.

---

[1] A copy of the *Order and Certification of the Judicial Council of the Ninth Circuit* is attached as Exhibit A. The background facts set out in this petition are drawn from the *Judicial Council's Order and Certification.*
[2] *Judicial Council's Order and Certification* at 3.

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-2932

8.  On March 1, 2024, after concluding the investigation, the Special Committee submitted a 105-page Report and Recommendations along with 1,039 pages of exhibits to the Ninth Circuit Judicial Council.

9.  The Committee's investigation included a review of more than 700 pages of text messages between Kindred and his law clerks. Twenty one persons were interviewed, including Kindred, former and current court staff, attorneys, and persons with knowledge relevant to the investigation.

10.  On April 5, 2024, then-Judge Kindred presented oral argument to the Judicial Council. After questioning under oath, Kindred admitted that he had lied to the Special Committee throughout the investigation.

11.  On May 23, 2024, the Judicial Council found that Kindred committed misconduct by (1) creating a hostile work environmental for his law clerks and engaging in unwanted, offensive, and abusive sexual conduct, and treating the law clerks in a demonstrably egregious and hostile manner; (2) having an inappropriately sexualized relationship with one of his law clerks during her clerkship and shortly after the clerkship ended while she was an Assistant United States Attorney (AUSA) practicing before him; and (3) lying to the Chief Circuit Judge, Special Committee and Judicial Council. [3] The Judicial Council found that Kindred did not engage in retaliation.

---

[3] *Id.* at 1.

ALASKA BAR
ASSOCIATION
BOX 100279,
ANCHORAGE, ALASKA
99510

(907) 272-7469
FAX (907) 272-2932

12. As to the first misconduct finding, the Judicial Council adopted the Special Committee's findings that Kindred created a hostile chambers environment for his law clerks. The report stated:

> Kindred appeared to have no filter as to the topics he would discuss with the clerks. He discussed his past dating life, his romantic preferences, his sex life, the law clerks' boyfriends and dating lives, his divorce, his interest in and communication with potential romantic or sexual partners, and his disparaging opinions of his colleagues.[4]

13. Six hundred twenty-eight pages of text messages to a chambers group chat contained messages that were "crude, sexual, personal, and vulgar." Kindred claimed he was not "hoe-ignorant", commented about "giving blow jobs in a hot tub," offered to pay for a person's "next ass tattoo", and said he'd bring "Patrón, heroin, and 'whip-its'" to a chambers dinner party.[5]

14. The Judicial Council adopted findings that Kindred failed to establish a professional environment with appropriate boundaries when he "ridiculed his judicial colleagues, divulged personal details of his marital life, and made inappropriate comments about, sex, drinking, and drugs."[6]

15. With respect to evidence of a sexualized relationship with one of his law clerks, the Judicial Council adopted the Special Committee findings that in an eleven month period, Kindred and the clerk exchanged 278 pages of text messages, a small number of which related to the clerk's legitimate job

---

[4] *Id.* at 4.
[5] *Id.* at 4-5, 18,
[6] *Id.* at 17.

ALASKA BAR ASSOCIATION BOX 100279 Anchorage, Alaska 99510 (907) 272-7469 FAX (907) 272-2932

duties. The Special Committee found that there were two instances of physical interaction during the inappropriate sexualized relationship, one time in Kindred's court chambers and the second time at an Airbnb.

16.    The Special Committee found Kindred ignored a conflict of interest when the clerk became an employee of the U. S. Attorney's office and would be involved in federal prosecutions before Kindred.  The Special Committee found Kindred failed to disclose potential conflicts of interests when he had inappropriate interaction and relationships with two attorneys who often appeared before him.[7]

17.    Evidence established that Kindred lied to the Chief Judge, the Special Committee and the Council.  For instance, the Committee determined that Kindred's statements about the two sexual encounters between himself and the law clerk "were patently false, each being rebutted by contemporaneous evidence, particularly text messages exchanged between the law clerk and Judge Kindred following both encounters."[8]

18.    Kindred made numerous false statements in a deliberate attempt to mislead the Special Committee.  The Committee wrote that Kindred "violated his obligations to be candid and honest with disciplinary authorities.  While some of his false statements are more significant than others, his overall response and testimony established a pattern of deceit."[9]

---

[7] *Id.* at 16, 21, fn16.
[8] *Id.* at 8.
[9] *Id.* at 24.

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-0932

In the Disciplinary Matter Involving Joshua M. Kindred
Petition for Formal Hearing – ABA File No. 2024D147

19. During oral argument before the Judicial Council, Kindred admitted that he lied to the Special Committee and deliberately chose to mislead the Committee.

20. The Judicial Council summarized:

> Judge Kindred admitted that there was nothing that prevented him from coming to the Committee after his October 2023 interview with the Committee to correct his dishonesty. Judge Kindred acknowledged that he also could have corrected the record in his written response to the Committee report but failed to do so. Judge Kindred admitted that he had yet another opportunity to correct the record during his oral argument before he was subject to the Judicial Council's questions about specific incidents, but he again failed to do so.[10]

21. The Special Committee found that Kindred did not retaliate against individuals for reporting his behavior although one clerk left the clerkship and others reported feeling ostracized.

22. After review of the Special Committee's findings, the Judicial Council unanimously ordered: (1) that Kindred be publicly reprimanded for his conduct; (2) that Kindred be requested to voluntarily resign; and (3) that the matter be referred to the Judicial Conference for consideration of impeachment.

23. The Judicial Council of the Ninth Circuit unanimously determined that Kindred's conduct might constitute one or more grounds for impeachment

---

[10] *Id.* at 13.

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-2932

In the Disciplinary Matter Involving Joshua M. Kindred
Petition for Formal Hearing – ABA File No. 2024D147

under Article II of the Constitution and certified the matter to the Judicial Conference.

24. The Committee on Judicial Conduct and Disability of the Judicial Conference of the United States (JC&D Committee) reviewed the Circuit Judicial Council Order for errors of law, clear errors of fact, or abuse of discretion. The JC&D Committee found the Special Committee conducted a thorough investigation and afforded Kindred all the process he was due under the JC&D Act and the Rules. The JC&D Committee affirmed the Circuit Judicial Council's unanimous decision.

25. On July 3, 2024, Kindred announced his resignation effective July 8, 2024, and waived all appellate rights in connection with the complaint and Judicial Council proceedings.

26. On September 12, 2024, the Judicial Conference of the United States, sent a Certificate and record of proceedings in a judicial misconduct matter to the House of Representatives.[11] The Judicial Conference believed the certification to the House of Representatives was necessary given the severity of the misconduct together with a finding of dishonesty and that consideration of impeachment was warranted.

---

[11] A copy of the September 12, 2024 letter and the Certificate to the Speaker, United States House of Representatives is attached as Exhibit B.

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-2932

## COUNT ONE

### Rule 8.1  Bar Admission and Disciplinary Matters

27.    Under ARPC 8.1(a), a lawyer in connection with a disciplinary investigation of his own conduct, shall not "knowingly make a false statement of material fact."

28.    Kindred violated Rule 8.1 when he knowingly made false statements during the investigation.  As the Judicial Council of the Ninth Circuit stated:

> Judge Kindred did not make false statements because of some lapse in memory.  Rather, Judge Kindred admitted that he deliberately misled the Special Committee despite knowing the correct and honest answers.  When asked if he lied to the Committee, Judge Kindred responded, 'I –I did.'  Judge Kindred also acknowledged that he was provided multiple opportunities to correct the record but chose not to. Indeed, even after receiving the Special Committee report, which found that Judge Kindred had been dishonest throughout the investigation, Judge Kindred *still* stuck to his false narrative.  Judge Kindred misled the Chief Judge, the Special Committee, and the Judicial Council for as long as he could.  Only when faced with overwhelming evidence and repeated questioning by the Council did Judge Kindred finally, in a piecemeal fashion, provide the details of his conduct, including what occurred at the Airbnb.[12]

---

[12] *Id.* at 29. (Emphasis in the original.)

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-2932

## COUNT TWO

### Rule 8.4(c) Misconduct

29. Under ARPC 8.4(c) it is professional misconduct for a lawyer to: "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer's fitness to practice law."

30. Kindred violated ARPC 8.4(c) when he deliberately chose to mislead the Special Committee during its investigation, lied to the Special Committee and Judicial Council, and ignored multiple opportunities to correct his dishonesty.

## COUNT THREE

### Rule 8.4(f) Misconduct

31. Under ARPC 8.4(f) it is professional misconduct for a lawyer to:

> (f) engage in conduct that the lawyer knows is harassment or invidious discrimination during the lawyer's professional relations with (1) officers or employees of a tribunal; (2) lawyers, paralegals, and others working for other law firms; (3) parties, regardless of whether they are represented by counsel; (4) witnesses; or (5) seated jurors.

In addition it is professional misconduct for a lawyer to knowingly engage in harassment or invidious discrimination in the lawyer's dealings with the lawyers, paralegals, and others working for that lawyer or for that lawyer's law firm, if the lawyer's conduct results in a final agency or judicial determination of employment misconduct or discrimination.

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-2932

32. In its May 23, 2024 Order and Certification, the Judicial Council of the Ninth Circuit concluded that "Judge Kindred engaged in misconduct by creating a hostile work environment for his law clerks, coupled with 'unwanted, offensive, [and] abusive conduct,' and treatment of the law clerks 'in a demonstrably egregious and hostile manner,' to the detriment of the business of the courts."[13]

33. By creating a hostile chambers environment for his law clerks, Kindred violated ARPC 8.4(f).

## SANCTIONS ANALYSIS

34. The American Bar Association Standards for Imposing Lawyer Sanctions (1986) ("ABA Standards"), adopted in *In re Buckalew*, 731 P.2d 48 (Alaska 1986) and reported decisions of the Alaska Supreme Court, govern the sanctions for Respondent's misconduct.

35. Under ABA Standard 3.0, the following factors are to be considered in imposing sanctions after a finding of lawyer misconduct:

(a) the duty violated;
(b) the lawyer's mental state;
(c) the actual or potential injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating factors.

---

[13] *Id.* at 19.

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-2932

In the Disciplinary Matter Involving Joshua M. Kindred
Petition for Formal Hearing – ABA File No. 2024D147

Page 10 of 16

36. These factors are addressed in a three-part methodology: 1) determine the first three factors; 2) determine recommended sanction; and 3) determine whether aggravating or mitigating circumstances exist. *In re Schuler*, 818 P.2d 138, 140 (Alaska 1991).

## Part 1: Duty Violated; Lawyer's Mental State; Actual or Potential Injury

### *Duty Violated*

37. Kindred breached duties he owed to the legal system when he failed to cooperate with the Special Committee investigation and repeatedly lied to the Special Committee and Judicial Council, conduct which impaired the effective and expeditious administration of the business of the courts.

38. Kindred violated duties to the public when he failed to maintain personal honesty and integrity. His false statements undermine public confidence in the administration of justice as the public expects a judicial officer to be honest.

39. Kindred breached duties to the profession when he engaged in false and misleading communication that served to impede the Special Committee's investigation and Judicial Council's proceedings.

40. Kindred's creation of a hostile work environment obstructed the proper administration of justice and undermined the public respect for the legal profession.

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-2932

### Mental State

41. Under the ABA Standards:

'Intent' is the conscious objective or purpose to accomplish a particular result.

'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

'Negligence' is the failure of the lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.

42. Under the ABA Standards, the most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result.

43. Kindred acted with intent when he purposely misled and lied to the Special Committee and the Judicial Council.

44. Kindred acted with intent when he had an inappropriately sexualized relationship with a law clerk during her clerkship and after her clerkship while she practiced as Assistant United States Attorney in the District of Alaska.

45. Kindred acted knowingly when he created a hostile work environment, discussing topics and using language that were inappropriate in a professional setting. He acted knowingly when he sent numerous text

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-2932

messages that did not relate to legitimate job duties and were often sexual in nature.

### Actual or Potential Injury

46. Kindred's false and misleading statements during the investigation disrupted proceedings and made it more difficult for the Special Committee to uncover the truth of what occurred. Kindred's dishonesty obstructed the Judicial Council's proceedings. The dishonesty of a federal judge weakens the public's confidence that the judiciary adheres to the highest ethical standards. Kindred's creation of a hostile work environment for judicial employees took a personal and professional toll on multiple clerks. It undermined respect for the legal profession and adversely affected the administration of justice and the business of the courts.

### Part 2: Recommended Sanction under ABA Standards

47. ABA Standards § 5.0 discusses violation of duties owed to the public. Standard 5.1 recommends disbarment when a lawyer fails to maintain personal integrity through intentional conduct involving dishonesty, deceit and misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

48. ABA Standard § 7.0 discusses violations of duties owed to the profession. Standard 7.1 recommends disbarment when "a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510

(907) 272-7469
FAX (907) 272-2932

intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."

49.     ABA Standard § 6.0 discusses violations of duties owed to the legal system. Standard 6.1 recommends disbarment when a lawyer, with the intent to deceive the court, makes a false statement and causes a significant or potentially significant adverse effect on the legal proceeding. Here disbarment is appropriate for the false material statements that Kindred repeatedly made to the Special Committee and the Judicial Council. Such falsehoods obstructed the effective administration of the court's business. His failure to be honest and truthful directly impacts his ability to practice law and to be a competent member of the profession.

50.     The Comment to APRC 8.4(f) notes that "harassment and invidious discrimination are intolerable because of their adverse effect on the proper administration of justice." A lawyer's harassment can impair the effectiveness of the judicial employees. The Comment also notes that an "attorney who knowingly engages in such conduct perverts advocacy, obstructs the proper administration of justice, and undermines public respect for, and acceptance of, our adversary system and the legal profession." Disbarment is the appropriate sanction for Kindred's fostering a hostile work environment, including subjecting chamber's staff to unwanted, offensive, or abusive sexual conduct and harassment, and treating staff and law clerks in a demonstrably egregious and hostile manner.

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510
(907) 272-7469
FAX (907) 272-2932

In the Disciplinary Matter Involving Joshua M. Kindred
Petition for Formal Hearing – ABA File No. 2024D147          Page 14 of 16

## DISCIPLINARY SANCTION

### Indicated Discipline

51. Based on a review of the ABA Standards, the misconduct, without application of aggravating and mitigating factors, supports disbarment from the practice of law for dishonesty and for the hostile work environment that took a personal and professional toll on multiple law clerks.

### Aggravating and Mitigating Factors

52. ABA Standards § 9.0 sets out factors that may be considered in aggravation and mitigation.

53. The following aggravating factors may be considered in deciding what sanction to impose:

- Dishonest or selfish motive (9.22(b));

- A pattern of misconduct (9.22(c));

- Multiple offenses (9.22(d));

- Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency (9.22(f));

- Submission of false evidence, false statements, or other deceptive practices during the disciplinary process (9.22(f)); and,

- Substantial experience in the practice of law (9.22 (i)).

54. The mitigating factor that may be considered in deciding what sanction to impose is:

- Absence of a prior disciplinary record (9.32(a)).

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510

(907) 272-7469
FAX (907) 272-2932

55. The mitigating factor is insufficient to offset several aggravating factors and does not merit reduction of a presumptive sanction of disbarment.

## REQUEST FOR COSTS AND FEES

56. Under Alaska Bar Rule 16(c)(3), upon a finding of misconduct, Joshua M. Kindred should be required to pay the Bar Association's costs and fees assessment according to the schedule.

## REQUEST FOR DETERMINATION

57. The Alaska Bar Association requests that the Area Hearing Committee hear this matter and issue its findings of fact, conclusions of law and recommendation for discipline to the Disciplinary Board of the Bar.

DATED at Anchorage, Alaska, this 31st day of January, 2025.

ALASKA BAR ASSOCIATION

By: _____
Louise R. Driscoll
Assistant Bar Counsel
Bar Member No. 8511152

G:\Ds\DISC CASES\2024\2024D147\PFFH\Petition for Formal Hearing.docx

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510

(907) 272-7469
FAX (907) 272-2932

In the Disciplinary Matter Involving Joshua M. Kindred
Petition for Formal Hearing – ABA File No. 2024D147

Page 16 of 16

# United States Courts for the Ninth Circuit

Office of the Circuit Executive · 95 7th Street, San Francisco, CA 94103 · (415) 355-8800 · mediarelease@ce9.uscourts.gov

## NEWS RELEASE

July 8, 2024

Contact: Bill Cracraft
mediarelease@ce9.uscourts.gov

# Judicial Conduct and Disability Complaint Number 22-90121

SAN FRANCISCO – The Judicial Council of the Ninth Circuit filed an Order and Certification in *In re Complaint of Judicial Misconduct*, No. 22-90121, on May 23, 2024, concerning a complaint of judicial misconduct against U.S. District Judge Joshua M. Kindred of the District of Alaska. The Order and Certification is now being made public pursuant to 28 U.S.C. §360(b) and in consultation with the Judicial Conference of the United States.

The Order and Certification is the result of a thorough investigation conducted by a Special Committee appointed by Chief Circuit Judge Mary H. Murguia. In its Order and Certification, the Judicial Council concluded, among other things, that Judge Kindred engaged in misconduct by creating a hostile work environment for his law clerks and by having an inappropriately sexualized relationship with one of his law clerks both during her clerkship and after she became an Assistant United States Attorney. The former law clerk did not appear on any case before Judge Kindred while she was employed as an Assistant United States Attorney.

In the Order and Certification, the Judicial Council publicly reprimanded and admonished Judge Kindred for his conduct, which violated the Judicial Conduct and Disability Act and the Code of Conduct for United States Judges. The Judicial Council also requested that Judge Kindred voluntarily resign and certified the matter to the Judicial Conference of the United States to consider impeachment.

Judge Kindred resigned, effective Monday, July 8, 2024. The Judicial Conference of the United States will continue to consider the matter, including the certification with respect to impeachment.

EXHIBIT A

**JUDICIAL COUNCIL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| IN RE COMPLAINT OF | No. 22-90121 |
| JUDICIAL MISCONDUCT | ORDER |

Before: MURGUIA, Chief Circuit Judge, HAWKINS, NGUYEN, MILLER, and BADE, Circuit Judges, SNOW, GEE, DU, and BASTIAN, Chief District Judges*

**ORDER AND CERTIFICATION**

This judicial misconduct order arises from a complaint against Judge Joshua M. Kindred, District Judge of the United States District Court of Alaska. The Judicial Council adopts the findings of the Special Committee, which include a 105-page report along with 1,039 pages of exhibits. The Council concludes that:

(1)    Judge Kindred created a hostile work environment for his law clerks by engaging in unwanted, offensive, and abusive conduct, and treating the law clerks in a demonstrably egregious and hostile manner.

(2)    Judge Kindred engaged in misconduct by having an inappropriately sexualized relationship with one of his law clerks during her clerkship and shortly after her clerkship while she practiced as an Assistant United States Attorney in the District of Alaska.

(3)    Judge Kindred did not retaliate against individuals for reporting his behavior or participating in the misconduct process.

(4)    Throughout these proceedings, Judge Kindred lied to the Chief Judge, the Special Committee, and the Council. Although the evidence

---

*Circuit Judge Morgan Christen and Senior District Judge Timothy M. Burgess are members of the Judicial Council but did not participate in the consideration of this matter pursuant to Rule 25(a) of the Judicial-Conduct and Judicial-Disability Rules.

indicated that he had a sexual encounter with his former law clerk, Judge Kindred maintained that he "never had any sexual contact with [the law clerk]." Only when asked under oath during the Judicial Council meeting of April 5, 2024, did he admit that he had deliberately lied to the Special Committee.

In view of these findings and pursuant to 28 U.S.C. § 354(b)(2)(A), the Council certifies to the Judicial Conference of the United States that United States District Judge Joshua M. Kindred has engaged in conduct that might constitute one or more grounds for impeachment under Article II of the Constitution. It further orders that Judge Kindred be publicly reprimanded for the conduct described in this order that violates the Rules of the Judicial Conduct and Disability Act and the Code of Conduct for the United States Judges and is prejudicial to the effective and expeditious administration of the business of the courts and the administration of justice. It further requests that Judge Kindred resign voluntarily from the position of United States District Court Judge for the District of Alaska.

## I. PROCEDURAL HISTORY

In November 2022, Chief Judge Mary H. Murguia received information about possible misconduct by the Honorable Joshua M. Kindred, District Judge of the United States District Court of Alaska. Responding to this information, Chief Judge Murguia directed a limited inquiry under Rule 5 of the Rules for Judicial-Conduct and Judicial-Disability ("JC&D") Proceedings.

Upon determining that there was probable cause to believe that misconduct had occurred, on December 27, 2022, Chief Judge Murguia identified a misconduct complaint against Judge Kindred pursuant to 28 U.S.C. § 351(b) and JC&D Rule 5(a).[1] The complaint stated that probable cause existed that Judge Kindred: (1) created a hostile work environment for one or more judicial employees by subjecting them to regular discussions about his personal life, including conversations of a sexual nature, and ostracized a judicial employee who raised concerns about this behavior; (2) engaged in unwanted physical sexual

[1] *See* JC&D Rule 5(a) ("When a chief judge has information constituting reasonable grounds for inquiry into whether a covered judge has engaged in misconduct or has a disability, the chief judge may conduct an inquiry, as he or she deems appropriate, into the accuracy of the information even if no related complaint has been filed. A chief judge who finds probable cause to believe that misconduct has occurred . . . may identify a complaint and, by written order stating the reasons, begin review provided in Rule 11.").

conduct with a former judicial employee and engaged in unwanted verbal sexual conduct with that employee both during and after her clerkship; and (3) told individuals with knowledge of his potential misconduct to remain silent. Judge Kindred was provided with an opportunity to respond to the complaint pursuant to JC&D Rule 11(f).[2]

In his response, Judge Kindred offered his "unequivocal denials to these allegations," stating that he was "in possession of communications that [he] believe[s] clearly establish that these allegations are entirely without merit." Based on Judge Kindred's response and the information gathered during the limited inquiry, Chief Judge Murguia determined that there were reasonably disputed issues that needed to be investigated by a Special Committee.[3]

On February 3, 2023, Chief Judge Murguia appointed a Special Committee to investigate the allegations in the complaint and report its findings and recommendations to the Judicial Council. On March 30, 2023, Chief Judge Murguia added two judges to the Committee.[4] The Special Committee retained the services of an outside investigator and outside counsel.

The Special Committee submitted its 1,144-page report, inclusive of exhibits, to the Judicial Council on March 4, 2024. The Judicial Council met on April 5, 2024, and Judge Kindred presented oral argument before being questioned by the Council.

---

[2] *See* JC&D Rule 11(f) ("Before appointing a special committee, the chief judge must invite the subject judge to respond to the complaint either orally or in writing.").

[3] *See* JC&D Rule 11(b) ("In determining what action to take under Rule 11(a), the chief judge may conduct a limited inquiry. . . . In conducting the inquiry, the chief judge must not determine any reasonably disputed issue. Any such determination must be left to a special committee appointed under Rule 11(f) and to the judicial council that considers the committee's report."); *see also* Commentary to JC&D Rule 11(b) ("An allegation of fact is ordinarily not 'refuted' simply because the subject judge denies it. . . . If it is the complainant's word against the subject judge's—in other words, there is simply no other significant evidence of what happened or of the complainant's unreliability—then there must be a special-committee investigation.").

[4] The members of the Special Committee were Senior Circuit Judge M. Margaret McKeown, presiding officer; Chief Circuit Judge Mary H. Murguia; Circuit Judge Mark J. Bennett; District Judge Dana L. Christensen, District of Montana, and District Judge Cathy A. Bencivengo, Southern District of California.

## II.   THE SPECIAL COMMITTEE INVESTIGATION AND REPORT

The Committee's investigation included a review of documents obtained from various witnesses and Judge Kindred, including text messages exchanged between Judge Kindred and his law clerks.  These communications included more than 700 pages of text messages.

The Committee also interviewed witnesses, including Judge Kindred, current and former court staff, as well as several attorneys and individuals with knowledge relevant to the Committee's investigation.  In all, 21 individuals were interviewed in person or by video.  All interviews included at least two interviewers.  Of the 21 individuals interviewed, 13 were current or former judiciary employees, including nearly all of Judge Kindred's current (at the time) and former law clerks.[5]

The Committee's investigation revealed that Judge Kindred created a hostile chambers environment for his law clerks.  Judge Kindred appeared to have no filter as to the topics he would discuss with the clerks.  He discussed his past dating life, his romantic preferences, his sex life, the law clerks' boyfriends and dating lives, his divorce, his interest in and communications with potential romantic or sexual partners, and his disparaging opinions of his colleagues.  He also made disparaging comments about public and political figures.  Some examples of these comments include: "I was a huge hit at dinner Partly due to how much shit I talked about Sarah palin"; "I told a republican [state] senator to eat a dick"; and "[a senator] is worried that I can kick [] his ass."

He also had no hesitation in using language that was inappropriate in a professional setting, such as encouraging rating people based on "fuckability," stating that he was not "hoe-ignorant," or telling stories about "giving blow jobs in a hot tub."  In the few instances where clerks came to Judge Kindred to discuss his inappropriate behavior, they were belittled or ostracized, and, in one instance, a clerk left the clerkship.

Though many of these comments occurred in chambers, Judge Kindred also sent his law clerks numerous text messages over an extended period.  These text messages document the nature of Judge Kindred's inappropriate interactions with his law clerks as these comments lacked any connection to the clerks' legitimate

---

[5] Most witnesses, and particularly Judge Kindred's law clerks, expressed significant reluctance or discomfort about being involved in the investigation, and several law clerks requested anonymity.

job duties and were often sexual in nature. For instance, Judge Kindred made inappropriate and often vulgar comments to his law clerks such as "I'm just gonna pay for [a law clerk's boyfriend's] next ass tattoo"; "You're going to the big leagues. You might be better in the butt leagues"; "I've never been invited to an orgy by a stranger before"; "I got asked out by a waitress which actually made me feel way less insecure about being single again, which was nice"; and "So it looks like I might need a judicial tinder profile."

One clerk reported that Judge Kindred told her that an Assistant United States Attorney ("AUSA") had sent him nude photographs. She did not know what to do with that information. Judge Kindred was seeking advice from the clerk about what to do, and she told him."I am just a law clerk"; she reported being "devastated." Judge Kindred's texts with the clerk after this incident indicate that he may have felt insecure about sharing such information: "I don't want you to think less of me"; "But you don't think I suck? Do I give off a desperate for attention vibe?"

The Committee's investigation revealed an unusually close relationship between Judge Kindred and one of his law clerks. The sheer volume of text messages reveals Judge Kindred's regular demands on that law clerk's personal time and attention. During an eleven-month period, Judge Kindred and the clerk exchanged 278 pages of text messages, only a small fraction of which had any relationship to her legitimate job duties. Some of these text messages were exchanged even while the clerk was out of the district for a week undergoing a medical procedure. During this time, Judge Kindred continued to send communications, such as telling the clerk that he missed her and "it feels like I haven't seen you in months"; asking how things were going with the clerk's boyfriend; and stating that "[w]ork is so much better when you are here." Similarly, in July 2022, when Judge Kindred was traveling for a conference, he texted the law clerk incessantly, saying, "I've missed you this week which makes me worry about the emotion[al] wreck I'm going to be when you leave."

Judge Kindred also emphasized that this law clerk was an important and special presence in his life by making statements such as, "We are ride or die for life"; "you're legitimately one of my best friends and favorite human beings in the world"; "I will forever be your biggest cheerleader. You're a better lawyer than me, and I want you to just crush it. You're sneaky one of my best friends"; and "Nothing is real until I talk to you about it. But why am I so needy? What's wrong with me?"

This law clerk reported that on October 3, 2022, about a week after she left her clerkship and began her new job as an AUSA for the District of Alaska, Judge Kindred asked her if she would like to get drinks. The law clerk stated that halfway through the evening, Judge Kindred said that "there's always been something between us, right?" The law clerk stated that she was intoxicated, and Judge Kindred was also likely intoxicated.

At the end of the night, Judge Kindred offered to drive the clerk home but said that he needed to stop by the courthouse and asked her to come upstairs to his chambers. He asked her to sit on the couch with him, but the clerk sat on the couch across from him. The law clerk reported that, at some point, Judge Kindred kissed her and grabbed her buttocks. She reported that she did not instigate the kiss. She indicated that it was brief, "just like smooch," and almost immediately afterwards, Judge Kindred dropped her home.

Judge Kindred's version of events, as told to the Committee in his written responses and in his interview, differs markedly from the law clerk's: He stated that it was the law clerk who asked to meet for drinks; that she told him she was in love with him; that the law clerk said she wanted to come up to chambers; that she initiated two kisses in chambers; that he never sat on a couch; and that she propositioned him on the way home. However, these denials were belied by documentary evidence and, as revealed later during Judge Kindred's testimony to the Judicial Council, by Judge Kindred's own admissions.

The next time Judge Kindred was alone with the law clerk was on October 7, 2022, when Judge Kindred was moving out of his home, and the clerk still in his employ decided to throw him a pizza party. The law clerk reported that she did not speak one-on-one with Judge Kindred at the pizza party. However, Judge Kindred kept asking the law clerk to sit with him on the couch. She kept saying no but she thought, "Are you hitting on me openly in front of the clerks now?" The law clerk eventually left the party. She stated that Judge Kindred then texted her, and she told him that they needed to talk in person, so she asked Judge Kindred to pick her up. Initially, they were talking in his truck outside her house, but it was cold, so Judge Kindred suggested they go to his temporary apartment.[6]

The law clerk reported that, immediately after arriving at the apartment, Judge Kindred went to one of the bedrooms. Judge Kindred kept shouting to the

---

[6] This apartment was referred to in testimony as an "Airbnb," but it was in fact an apartment belonging to an acquaintance of Judge Kindred.

clerk to "come to the bedroom, come to the bedroom" as he was lying on the bed and asked the clerk to lie down with him. Initially, she sat on the corner of the bed but at Judge Kindred's insistence, she lay down. At this point, the law clerk explained that:

> [H]e started putting his hands on me. And so I remember the first time he like grabbed my boob, and I like grabbed his like forearm, and I remember thinking like he felt really strong and I tried to like pull his arm off of me. . . . I just remember thinking like there's nothing I can do about this, like this is about to happen. . . . I remember him saying something about like "Finally," like – because I remember just feeling like, yeah, finally, like you win like the game. Like I always felt like this – like this thing that he couldn't touch and finally he felt like he could touch. . . . He took my pants off. I'm pretty sure I was still wearing a shirt. . . . And then he performed oral sex on me.

As with the chambers incident, Judge Kindred's report of the Airbnb incident to the Committee differed markedly from the law clerk's recollection. Judge Kindred reported that when they got to the Airbnb, he sat on a love seat and the law clerk sat on a couch across from him, and they had a two-hour-long conversation about their relationship and the law clerk's future employment opportunities. In particular, Judge Kindred stated that there were no physical or sexual interactions with the law clerk at any point during the night of October 7, 2022, and they did not lie down on the bed at any point.

Judge Kindred and the law clerk continued to text each other, and ten days after the Airbnb incident, on October 17, 2022, they exchanged the following text messages:

| Judge Kindred: | You've been a whole ass adult |
| | Emphasis on ass |
| | . . . |
| | Didn't imagine your exit interview would involve that much oral |
| Law Clerk: | *argument |
| | Yes it was quite compelling |
| Judge Kindred: | I hope so |
| Law Clerk: | I feel like I was pretty up front about that |

The neighbors know, anyhow

**Judge Kindred:**   Well, I know I enjoyed it

Got to see you from a pretty amazing perspective

When questioned by the Committee about the text message regarding the exit interview involving "oral" and how Judge Kindred saw the former clerk from a "pretty amazing perspective," Judge Kindred could not provide an explanation for those text messages. However, he emphasized: "I can't reconcile them, but I'm telling you, we -- all we did in that apartment that night was have a conversation. I don't -- I don't remember the context of this, but I've not seen [this law clerk] naked, so that doesn't make any sense to me. But again, I don't -- I don't know."

\*      \*      \*

Based on the results of its investigation, the Committee determined that the law clerks and other witnesses were credible and that Judge Kindred had been dishonest with the Committee. The Committee found that Judge Kindred committed misconduct by: (1) subjecting his chambers staff to a hostile work environment, including subjecting them to unwanted, offensive, or abusive sexual conduct and harassment, and treating them in a demonstrably egregious and hostile manner; (2) sexually harassing a law clerk during her time as his law clerk and in the weeks after she departed her clerkship by continuing a sexualized relationship; (3) engaging in inappropriate sexual and verbal encounters with a law clerk; and (4) being dishonest with the Committee through his written responses to the allegations in this complaint and during his interview.

The most egregious examples of Judge Kindred's dishonesty focused on the two sexual encounters in October 2022 between him and the law clerk, in particular when he stated that: (a) the law clerk kissed him twice in his chambers on the night of October 3, 2022, and (b) no physical interaction occurred at the Airbnb on the night of October 7, 2022. The Committee determined that both statements were patently false, each being rebutted by contemporaneous evidence, particularly text messages exchanged between the law clerk and Judge Kindred following both encounters.

To the extent Judge Kindred is alleged to have retaliated against individuals for disclosing misconduct, the Committee found that his actions, though ill-advised if they occurred, did not rise to the level of misconduct.

The Committee recommended that the Judicial Council request Judge Kindred's voluntary retirement from the bench and that he issue a private apology to all of his law clerks. If Judge Kindred declined to do so, the Committee recommended that Judge Kindred:

(1)   be publicly censured for his misconduct;

(2)   publicly apologize for his conduct;

(3)   privately apologize to all of his law clerks;

(4)   receive evaluation, training, and counseling on sexual harassment, employee relations, and chambers management, including any follow-on counseling if recommended by any of the professionals involved in his counseling;

(5)   receive evaluation and counseling on alcohol use;

(6)   not be assigned new cases for a period of six months in order to provide him with a reasonable amount of time to complete the evaluation, training, and counseling;

(7)   hire a judicial or administrative assistant so that he is not alone with his law clerks and so that he can establish appropriate administrative and management protocols in chambers;

(8)   be assigned a district judge outside of Alaska to counsel and advise Judge Kindred with respect to docket and chambers organization and management for a period of six months; and

(9)   decline the position of Chief Judge of the District of Alaska at such time as he may be eligible for the position.

The Committee further recommended that the Judicial Council approve and oversee the apologies and the required evaluation, training, and counseling.

The unanimous Special Committee report and recommendations were sent to Judge Kindred on March 1, 2024, and to the Council on March 4, 2024.

## III.   JUDGE KINDRED'S WRITTEN RESPONSE TO THE SPECIAL COMMITTEE REPORT

Pursuant to JC&D Rule 20(a), Judge Kindred had an opportunity to submit a written response to the Special Committee Report. In his nine-page written response, Judge Kindred acknowledged, as he had previously, that he "failed to exercise appropriate boundaries and crossed lines I should not have crossed, particularly as it relates to the overarching trend of me treating employees as

friends and allowing my personal and professional struggles to become topics of conversation. Rather, I would hope that offering a more detailed description of the time period will establish that those relationships did not develop due to any sinister or illicit intent."

Judge Kindred then provided detailed information about the circumstances under which he came to the bench, mostly related to the fact that he only had a few weeks to observe his colleagues before the courthouse began shutting down due to the pandemic. He explained that for the first year or so of his time as a federal judge, the law clerk at the center of the allegations was "often the only person I would interact with face to face." Judge Kindred admitted that he was overwhelmed with his job and would often discuss this with the law clerk.

He further elaborated on how he and the law clerk developed a close, personal relationship, which mostly involved the law clerk seeking Judge Kindred's advice and guidance. He also stated that as the Alaska District Court began to open up again following the pandemic, "my chambers was frequented by staff, almost all of whom were voicing complaints of some fashion," and he was "quite certain that I leaned on [the law clerk] during that time for counsel and support." Judge Kindred explained that he provided this information "not to excuse myself, as it was always my responsibility to establish proper boundaries, which I clearly failed to do. However, I do think an honest description of this period of time is helpful to provide some context that I felt was lacking in the Committee Report and contradict the false narrative that conversations about anyone's personal life was initiated unilaterally be myself. I am not suggesting that this excuses how close my friendship was with [the law clerk], but it was not something that was born out of something sinister. Nor do I believe that the clerks who have worked during that period of time would have described it as a hostile work environment." Judge Kindred included some thank you cards and greeting cards, ostensibly from former law clerks and externs,[7] in his written response to counter the "contention that the people who worked for me were unhappy."

As to the findings related to his inappropriate relationship and sexual interactions with the law clerk, specifically the two sexual encounters in October 2022, Judge Kindred stated that "I was not the aggressor. I was not overbearing. I was honest with [the law clerk] as to the difficult place I was in. I wish that I

---

[7] Judge Kindred did not indicate who these cards were from. Some cards were signed by individuals who do not appear on Judge Kindred's list of law clerks and externs that was provided by the District of Alaska.

would have been stronger and that I would have handled myself in a more respectable manner. This brief romantic interlude, while it should have been avoided, was not at all as [the law clerk] described." Judge Kindred then included a few text messages from the law clerk which he highlighted to "undermine the natural implications born from the allegation: that I was the aggressor."[8] Judge Kindred stated that the law clerk had made false allegations against others in the past, implying he was a victim of that same circumstance.

## IV.   JUDGE KINDRED'S ORAL ARGUMENT TO THE COUNCIL

On April 5, 2024, the Judicial Council met, and, under oath, Judge Kindred presented oral argument[9] pursuant to JC&D Rule 20(a).

Judge Kindred began his oral argument by stating that "I think my great sin here was the fact that during this period of time I treated my law clerks as friends rather than employees" and offering context that Judge Kindred felt was important. Most of this context involved an explanation of what Judge Kindred believed were the difficult circumstances under which he came to the bench, including the pandemic.

Judge Kindred rejected "the narrative, I think, in the Committee's report was somehow that -- that I was interjecting myself in the law clerk's personal life, and while I should have maintained a barrier it wasn't -- I wasn't being proactive." Judge Kindred provided several stories about the law clerk being upset by various events in her personal life and Judge Kindred offering his assistance with these events, and he stated that "she was somebody that I would often go to for counsel in a way that I'm sure is not typical."

As it relates to the specific allegations about sexual misconduct; Judge Kindred made the following statement during his oral argument:

> I guess, there were the other allegations that were made by [the law clerk] that I threatened her -- and this was after

---

[8] The Special Committee was already aware of these text messages as they were included in the Special Committee Report.

[9] Judge Kindred's oral argument and subsequent questioning by the Judicial Council were transcribed by an official court reporter, and all quotes taken from the Judicial Council meeting are from that transcript as originally provided: Thus, any irregularities and errors in grammar, punctuation, and spelling are reproduced from the transcript. Any emphases are from the undersigned judges of this order.

> her employment with me ended, that I threatened her and that there was some unwanted sexual contact and then, I guess, ultimately that I conspired with the US Attorney's Office ... [a]nd, now, *none of those allegations are true* ... I think it's difficult to read those text messages and being able to reconcile them with the idea that I somehow was aggressive and threatened her... it was not at all how it was described by [the law clerk] ...

The Judicial Council then had an opportunity to ask Judge Kindred questions.

At various points during that questioning, Judge Kindred admitted to certain conduct he had previously denied. He made these admissions only when specifically, and at times repeatedly, pressed with record evidence. Significantly, Judge Kindred admitted that he had lied to the Special Committee and that he had a sexual encounter with the law clerk at the Airbnb, despite his previous denials. As to other details, he maintained that he could not recall, despite the Special Committee's extensive evidence and his clear memories of other events during that same period.

Again, Judge Kindred admitted during the Council's questioning that his statements to the Committee—specifically his statement that no sexual interaction occurred at the Airbnb on the night of October 7, 2022—were not truthful and that he lied to the Committee. He went on to explain that he

> felt very — very uncomfortable and I guess naively I — given the context of the text messages that were exchanged from [the law clerk] to me before and after this night, I didn't think there was any scenario by which you could reconcile that with her allegations that something unwanted happened, and that wasn't right but I — I didn't know how to have this conversation without talking about the reasons we didn't have sex and, admittedly, I — I just couldn't — I just didn't do it.[10]

---

[10] Judge Kindred posited that he lied to the Committee because he did not want to talk about the reasons why he and the law clerk did not have sex; however, the reasons he provided to the Judicial Council for not having sex with the law clerk were the same reasons he provided to the Special Committee during his October 2023 interview.

Judge Kindred admitted that he lied to the Special Committee, and despite being presented with clear evidence that he had engaged in sexual acts, deliberately chose to mislead the Committee.

Judge Kindred admitted that there was nothing that prevented him from coming to the Committee after his October 2023 interview with the Committee to correct his dishonesty. Judge Kindred acknowledged that he also could have corrected the record in his written response to the Committee report but failed to do so. Judge Kindred admitted that he had yet another opportunity to correct the record during his oral argument before he was subject to the Judicial Council's questions about specific incidents, but he again failed to do so.

## V.  LEGAL STANDARDS

A federal judge's conduct is sanctionable under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364, and the JC&D Rules[11] if the conduct is "prejudicial to the effective and expeditious administration of the business of the courts." 28 U.S.C. § 351(a); JC&D Rule 4. JC&D Rule 4(a)(2) provides that cognizable misconduct includes certain specific behavior, such as "abusive or harassing behavior."

The Commentary to JC&D Rule 4 states that "[t]he Code of Conduct for United States Judges sets forth behavioral guidelines for judges" and that the Canons of the Code of Conduct for United States Judges (the "Canons") are "instructive."[12] The relevant Canons at issue are as follows:

- Canon 1 states that "[a] judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved." The Commentary to Canon 1 states that "violation of this Code diminishes public confidence in the judiciary and injures our system of government under law."

- Canon 2A states that "a judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the

---

[11] In 2008, the Judicial Conference of the United States promulgated the JC&D Rules to "guid[e] the various officers and bodies who must exercise responsibility under the Act." Commentary on JC&D Rule 1.

[12] A violation of the canons does not automatically establish the need for a sanction or discipline under 28 U.S.C. §§ 351-64. *See In re Charge of Judicial Misconduct*, 62 F.3d 320, 322 (9th Cir. 1995); *see also* Commentary to JC&D Rule 4.

integrity and impartiality of the judiciary." The Commentary to Canon 2A expounds on this further:

> An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges, including harassment and other inappropriate workplace behavior. A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen.

- Canon 3 states that a "judge should perform [the duties of judicial office] with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased." Canon 3(A)(3) explains that a judge "should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity." The Commentary to Canon 3 notes that:

> [t]he duty under Canon 2 to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative and administrative responsibilities. The duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice or bias.

The Commentary to Canon 3 further states that "[u]nder this Canon, harassment encompasses a range of conduct having no legitimate role in the workplace, including harassment that constitutes discrimination on impermissible grounds and other abusive, oppressive, or inappropriate conduct directed at judicial employees or others," citing to JC&D Rule 4.

- Canon 3B(6) states that a judge should take appropriate action upon receipt of reliable information indicating the likelihood that a judge's conduct contravened this Code. The Commentary to Canon 3B(6) further provides that "a judge should be candid and honest with disciplinary authorities."

When a district judge is the subject of a special committee report, the actions a judicial council can order that are appropriate to assure the effective and expeditious administration of the business of the courts within the circuit include, but are not limited to:

(1) ordering that, on a temporary basis for a time certain, no further cases be assigned to the judge whose conduct is the subject of a complaint;

(2) censuring or reprimanding such judge by means of private communication;

(3) censuring or reprimanding such judge by means of public announcement;

(4) certifying the disability of the judge pursuant to the procedures and standards provided under 28 U.S.C. § 372(b); and

(5) requesting that the judge voluntarily retire.

*See* 28 U.S.C. § 354(a)(2); JC&D Rule 20(b)(1)(D).

A judicial council must refer a complaint to the Judicial Conference if the council determines that a circuit judge or district judge may have engaged in conduct that might constitute grounds for impeachment. *See* 28 U.S.C. § 354(b)(2)(A); JC&D Rule 20(b)(2)(A).

## VI. DISPOSITION AND FINDINGS OF MISCONDUCT

Having considered the Special Committee's report, we unanimously adopt the Committee's factual findings. We supplement the Committee's factual findings with developments that occurred after the report was submitted, namely, Judge Kindred's written response to the Committee report, his opening statement to the Council, his testimony during the Council's questioning, and his admission that he lied to the Special Committee during his questioning by the Judicial Council.

At the outset, we note that Judge Kindred repeatedly stated that his relationships with his law clerks formed organically, and he had no "sinister intent." Judge Kindred fails to appreciate that the JC&D Rules are not framed in terms of intent. The touchstone is what is inappropriate to a reasonable person on the receiving end of the conduct. Further, a judge has special obligations to observe ethical constraints regardless of intent.

We also note that Judge Kindred has spent considerable time providing "context" to his behavior, which generally consists of portraying himself as the victim of difficult circumstances. He has also sought to blame the law clerk and portray her as the aggressor or as someone who regularly brings false allegations against others. In his responses, Judge Kindred often hedged, cast blame on others, claimed not to remember significant details of the events at issue in this investigation (despite written documentation in his possession detailing many of the events), and otherwise provided vague responses to questions.

For example, Judge Kindred admitted that he failed to establish proper boundaries with his law clerks, but his admission came with many irrelevant and unpersuasive qualifications. There is no doubt that Judge Kindred created an atmosphere in which he was inappropriately inserting himself into the personal lives of his law clerks, engaging in a sexualized relationship with one of his law clerks, and having sexually suggestive and explicit conversations with his law clerks.

Judge Kindred's failure to establish appropriate boundaries extended beyond his chambers as well. As stated in the Special Committee report, Judge Kindred received nude photographs from another, more senior AUSA who practiced before him, and then Judge Kindred discussed those photographs with his law clerk. He received sexually suggestive text messages from a local attorney who regularly appeared before him, which he also discussed with his law clerks. And he engaged in a sexual relationship with a former law clerk who was working as an AUSA in the District of Alaska. He undertook all these actions without any regard for the impact of and the ethical issues raised by his conduct. He remains strikingly unaware that he was the source of all these issues.

Beyond accepting responsibility for what he describes as his "original sin" of treating his law clerks as friends, he does not squarely acknowledge that his interactions with the law clerks had no legitimate place in any workplace, let alone a federal judge's chambers. Such lack of awareness is particularly troubling given his admission that he had likely received training on workplace harassment at

previous jobs. The Council has no confidence that he will ever conduct himself in a way befitting his office or in a way that promotes public confidence in the judiciary.

### A. Judge Kindred engaged in misconduct by creating a hostile work environment for his law clerks.

JC&D Rule 4(a)(2)(C) states that "creating a hostile work environment for judicial employees" is cognizable misconduct. The Code of Conduct provides that "[p]ublic confidence in the judiciary is eroded by irresponsible or improper conduct by judges, including harassment and other inappropriate workplace behavior." Commentary to Canon 2A. Canon 3B(4) further provides that "[a] judge should practice civility, by being patient, dignified, respectful, and courteous, in dealings with court personnel, including chambers staff. A judge should not engage in any form of harassment of court personnel." The Commentary to Canon 3B(4) explains that a judge should not engage in or tolerate "workplace conduct that is reasonably interpreted as harassment [or] abusive behavior," and "harassment encompasses a range of conduct having no legitimate role in the workplace, including . . . abusive, oppressive, or inappropriate conduct directed at judicial employees or others."

We conclude that Judge Kindred committed misconduct by creating a hostile work environment for his law clerks. That hostile work environment included "unwanted, offensive, and abusive sexual conduct, including sexual harassment," and treatment of "judicial employees . . . in a demonstrably egregious and hostile manner" in violation of JC&D Rule 4(a)(2).

In assessing the chambers environment, we look to the testimony and firsthand observations of Judge Kindred's law clerks. The clerks' observations are also supported by text messages. Crude, sexual, personal, and vulgar messages appear throughout the 628 pages of text messages that Judge Kindred exchanged in a chambers group chat and individually with the law clerk at the center of this investigation. No reasonable person would characterize these text messages as dignified, respectful, and courteous dealings with court personnel. In these messages with his clerks, Judge Kindred ridiculed his judicial colleagues, divulged personal details of his marital life, and made inappropriate comments about sex, drinking, and drugs.[13] The extraordinary volume of inappropriate communications

---

[13] There are many examples of these highly inappropriate text messages. To name a few, Judge Kindred told his law clerks, "Who gives a fuck about ethics, we need to get you paid," joked about

prove that conversations of this nature were a defining characteristic of Judge Kindred's relationships with his law clerks and the undignified atmosphere he fostered in chambers.

Though the law clerks appeared at times to initiate or reciprocate Judge Kindred's communications about personal matters, we agree with the Special Committee that, because of the inherent power imbalance in chambers, this was driven in some part by the law clerks wanting to preserve good relations with the judge. This conclusion is supported by their text messages with each other, which indicated that the clerks often humored Judge Kindred when he overstepped boundaries with them. They liked the judge personally and viewed him as a friendly figure, but they also wanted follow-on references, especially if they sought to remain in Alaska, where the legal community is very small. The judge's casual approach to the chambers environment exacerbated the power imbalance, a fact Judge Kindred still does not seem to acknowledge or understand. On reflection, and when interviewed by the Special Committee, several law clerks voiced their concern with the judge's behavior.

Our conclusion is further buttressed by Judge Kindred's acknowledgment that he inappropriately relied on his law clerks for personal support. He conceded that he relied on his law clerks in a way that he described as "uncontrolled," because he was in personal crisis, including going through a divorce. The law clerks recalled that during this time, the "work component started taking a back seat," that Judge Kindred would discuss his romantic or sexual interest in a local attorney, and that Judge Kindred was drinking frequently and to excess, including in his chambers at the end of the day. We recognize, of course, that a judge has broad latitude in managing his or her chambers and fostering meaningful and friendly relationships with chambers staff. Such discretion, however, assumes that the judge will establish a professional chambers environment with appropriate boundaries. A judge can establish meaningful relationships and encourage a productive work environment without subjecting staff to crude or sexual jokes and comments. We have no hesitation in concluding that Judge Kindred failed to conduct himself within those professional and appropriate limits.

Judge Kindred's conduct demonstrates that, for the most part, he was entirely unaware of his problematic behavior, which resulted in at least three law clerks suffering in silence at various points in time since Judge Kindred took the

---

"punching multiple Supreme Court justices," and said he'd bring Patrón, heroin, and "whip-its" to a chambers dinner party.

bench four years ago. The Council is not confident that Judge Kindred fully understands the gravity of his conduct even at this juncture. When asked if he understands that a chambers environment can be congenial without having the type of environment that existed in his chambers, Judge Kindred stated that "given how happy my term clerk seems now I think I've managed to at least come – do that. I think – I think – again, if we go back to sort of my original sins here, I don't know if it's [because of] my lack of confidence or the – or the fact that there was a pandemic." When asked if he has written chambers protocol for when a clerk, particularly a female clerk, tells him she is uncomfortable with the atmosphere in chambers, Judge Kindred stated that he did not know.

Looking at the totality of the chambers environment over a span of approximately two and a half years, we conclude that Judge Kindred's misconduct was pervasive and abusive, constituted sexual harassment, and fostered a hostile work environment that took a personal and professional toll on multiple clerks. Judge Kindred's conduct was not civil, dignified, or respectful—attributes that we expect from a federal judge—and his interactions with his law clerks were abusive, oppressive, and inappropriate. For these reasons, we conclude that Judge Kindred engaged in misconduct by creating a hostile work environment for his law clerks, coupled with "unwanted, offensive, [and] abusive conduct," and treatment of the law clerks "in a demonstrably egregious and hostile manner," to the detriment of the business of the courts.

**B.      Judge Kindred engaged in misconduct by having an inappropriately sexualized relationship with one of his law clerks during her clerkship and after she became an Assistant United States Attorney.**

JC&D Rule 4(a)(2)(A) provides that "engaging in unwanted, offensive, or abusive sexual conduct, including sexual harassment or assault" is cognizable misconduct. JC&D Rule 4(a)(2)(B) provides that "treating . . . judicial employees . . . in a demonstrably egregious and hostile manner" is cognizable misconduct. Canon 2 provides that "[a] judge should avoid impropriety and the appearance of impropriety in all activities" and "should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." The Commentary to Canon 2A states that "[a]n appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances . . . would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired." The Commentary to Canon 2A explicitly states that the prohibition on impropriety or the appearance thereof "applies to both

professional and personal conduct" and that "[a] judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen."

We conclude that Judge Kindred committed misconduct by engaging in sexual flirtation and fostering an inappropriately sexualized relationship with a law clerk during her clerkship. He also committed misconduct by continuing that sexualized relationship and engaging in two sexual encounters in the weeks following her clerkship at a time when the law clerk was employed in the office of the United States Attorney in Anchorage, conduct that also created an appearance of impropriety.

Regularly subjecting the law clerk to topics of a sexual nature and thus normalizing discussions of a sexual nature throughout the course of her clerkship is unquestionably inappropriate. It is no excuse that, in Judge Kindred's view, the relationship was consensual, and that his first few years as a federal judge were particularly difficult for him. During the clerkship, there was unquestionably a special bond between this law clerk and Judge Kindred. But it was a bond that crossed the line from professional to personal in an inappropriate way that Judge Kindred should have stopped.

Not only did other witnesses confirm the inappropriate relationship and their concerns surrounding it, but voluminous text messages over an extended period also evince a relationship that blurred any customary judge-law clerk boundaries. While not all of Judge Kindred and the law clerk's interactions were overtly sexual, there were regular references to topics of a sexual nature, some sexually suggestive and others sexually explicit, that have no place in an acceptable judge-law clerk relationship.[14]

We are supported in this conclusion by Judge Kindred's own acknowledgment that he crossed the line with this law clerk in particular. Judge Kindred offered explanations as to why he developed what he describes as a friendship with this law clerk, much of which involved the struggles he was facing as a new judge. Although Judge Kindred stated that he could not recall making

---

[14] Again, there are many examples of these disturbing text messages, which escalated in both frequency and degree over time. Examples ranged from Judge Kindred telling the law clerk, "[y]ou're like a fucking Disney princess . . . [y]ou are special," to "[y]ou looked amazing as always," to "[t]hose fucking blue pants you'd wear. Always killed me." Other messages are much more graphic.

comments about the law clerk's physical appearance to her, he in fact did so on multiple occasions both during and after her clerkship.

Judge Kindred's inappropriate behavior toward the law clerk did not stop when she left his chambers. In fact, the behavior escalated, and within a week of her departure from her clerkship, Judge Kindred sought to increase their intimacy.[15] Because of the close relationship and trust that was established during the clerkship, Judge Kindred's physical interactions with the law clerk closely following the conclusion of her clerkship were a continuation and escalation of this relationship and constituted sexual harassment.

Both sexual encounters occurred in October 2022, the first in his judicial chambers and the second at the Airbnb that served as his temporary residence. On both occasions Judge Kindred was engaging in a sexual relationship with an employee of the office that oversees federal prosecutions in the District of Alaska, which creates an appearance of impropriety and would naturally diminish public confidence in Judge Kindred's impartiality.[16] This conflict of interest should have been apparent to Judge Kindred, and he should have recognized his power as a judge and immediately put an end to any ongoing contacts beyond professional interactions or otherwise taken proper steps to disclose the relationship.[17] He did neither.

The court and the public have a right to expect high standards of individuals holding the privileged position of a federal judge. We conclude that Judge Kindred's integrity and temperament to serve as a judge are impaired because of his conduct.

As to the first sexual interaction between Judge Kindred and the law clerk, it is undisputed that Judge Kindred brought the law clerk to his chambers on October

---

[15] The chambers kiss occurred eleven days after the law clerk left her clerkship.

[16] Personal or intimate relationships between judges and AUSAs are not per se improper. The law clerk's status as an AUSA alone would not make the relationship improper. Rather, it was Judge Kindred's decision to escalate the inappropriate relationship with the law clerk and his failure to take appropriate action to avoid an appearance of impropriety that is problematic.

[17] As further evidence of his bad judgment, the Special Committee's investigation revealed other instances of Judge Kindred failing to disclose potential conflicts of interest. For example, Judge Kindred received nude photographs from a separate, more senior AUSA, with whom he had a flirtatious rapport. In addition, he and a different local attorney exchanged flirtatious text messages. He took no steps to report either of these inappropriate interactions and relationships that he had with these two attorneys who often appeared before him.

3, 2022, where they kissed. To the Committee, Judge Kindred stated that there were two kisses and denied that he initiated either of the kisses, despite clear text messages suggesting that he did. And initially, at the Judicial Council meeting, Judge Kindred continued to state that he did not initiate either of the two kisses. However, upon further questioning, including questions about the law clerk's text which asked him, referring to the kissing, "how long were you waiting to do that?" Judge Kindred eventually admitted to the Council that "we kissed each other" and "the first kiss was mutual." He also admitted that he grabbed the law clerk's buttocks that night, which he failed to admit to the Committee despite being faced with a text message he sent her later that night stating, "I didn't think your ass was going to feel as good as it looks."

Bringing a federal prosecutor to chambers late in the evening after both the judge and the prosecutor had been drinking shows highly questionable judgment in itself. Even if we give complete credence to Judge Kindred's version of events, his actions unquestionably created an appearance of impropriety, because by then the law clerk was employed as a prosecutor in the office that regularly appears before Judge Kindred. It is reasonable to be concerned that Judge Kindred's integrity and impartiality would be compromised by any sort of romantic interaction with the law clerk because of her position as an AUSA, but most especially because that interaction took place in the judge's chambers and Judge Kindred took no steps to disclose the relationship. It is undisputed that at this juncture, both the law clerk and Judge Kindred voiced attraction to each other and discussed whether they should have a further relationship. Because of this appearance of impropriety as well as the recency of the clerkship, the October 3, 2022, kiss incident in chambers constitutes sexual misconduct.

The second sexual encounter occurred at an Airbnb that Judge Kindred was staying in temporarily. Though Judge Kindred previously denied that any sexual conduct took place at the Airbnb on October 7, 2022, after exacting questions from the Council, he eventually admitted to the Judicial Council that a sexual interaction occurred there. To the Council, Judge Kindred emphasized that he was unable to have sexual intercourse with the law clerk but admitted that he did perform oral sex on her for "five, ten minutes," which indicates that the sexual intimacy was not fleeting. Judge Kindred also stated that the law clerk never said "no" to him during the interaction.

Judge Kindred and the law clerk disagree about whether the second of these encounters was consensual, and the record is inconclusive on that point. Our determination that Judge Kindred committed misconduct does not turn on the

consensual nature of the Airbnb incident or whether sexual intercourse was feasible. Engaging in sexual encounters with an AUSA and former law clerk, within mere weeks of her leaving her clerkship, all the while failing to disclose the sexual relationship to anyone, either at the time or later, was irresponsible and improper. The Council need not make a finding on whether the Airbnb incident was consensual to conclude that Judge Kindred committed misconduct.

Judge Kindred fomented a sexualized relationship with the law clerk throughout her clerkship, continued to have a sexualized relationship with her after she became an AUSA, ultimately engaged in two sexual interactions with her, and lied about it repeatedly over the course of these proceedings. Though the Special Committee did not find evidence of a repeated pattern or history of physical or sexual encounters with other court staff, Judge Kindred's two physical interactions with the law clerk are severe enough to cause the public to question his honesty, integrity, impartiality, temperament, and fitness to serve as a judge. This behavior contravenes the existing standards of behavior for judges and raises serious concerns about the public's confidence in the integrity of the judiciary which, in turn, implicates the effective and expeditious administration of the business of the courts.

**C.      Judge Kindred engaged in misconduct by making false and misleading statements to the Chief Judge, the Special Committee, and the Judicial Council throughout these proceedings.**

Public confidence in the courts is imperative to the judiciary as an institution because "deference to the judgments and rulings of courts depend on public confidence in the integrity and independence of judges." Commentary to Canon 1. Canon 2A emphasizes that "[a] judge . . . should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." The Commentary to Canon 2 further explains that "[p]ublic confidence in the judiciary is eroded by irresponsible or improper conduct by judges." As it relates to misconduct, Canon 3B(6) states that "[p]ublic confidence in the integrity and impartiality of the judiciary is promoted when judges take appropriate action based on reliable information of likely misconduct," and "a judge should be candid and honest with disciplinary authorities." The overarching definition of misconduct under the JC&D rules is conduct "prejudicial to the expeditious administration of the business of the courts," which includes the courts' ability to investigate and address possible misconduct. JC&D Rule 1(a).

Throughout this investigation, Judge Kindred made numerous false statements to the Special Committee in a deliberate attempt to mislead it. He violated his obligation to be candid and honest with disciplinary authorities. While some of his false statements are more significant than others, his overall responses and testimony established a pattern of deceit. For example:

- Judge Kindred told the Committee numerous times that no sexual interaction occurred with the law clerk at the Airbnb on October 7, 2022, but during pointed questioning by the Council, and when confronted with contemporaneous evidence, he finally admitted that one had taken place. Though this investigation began in 2023, it was not until the Council meeting in April 2024, after multiple opportunities to disclose the truth, that Judge Kindred admitted this conduct.

- Despite evidence to the contrary, Judge Kindred told the Committee that he neither engaged in a flirtation with a separate, more senior AUSA, nor received nude photographs from her. He admitted to both in response to questioning by the Council.

- Judge Kindred told the Committee that, when he and the law clerk were in his chambers on October 3, 2022, both kisses were initiated by the law clerk, despite clear evidence to the contrary. When confronted by the Council with that same contemporaneous evidence indicating that he had in fact initiated the kisses, he admitted that the kisses were "mutual."

- Judge Kindred told the Committee that the law clerk kissed him once by his desk and once by the door, whereas the law clerk stated that they were sitting down before kissing near the couches. Judge Kindred stated that both kisses occurred away from the couches and that he never sat on a couch despite a text message from Judge Kindred that night bemoaning that the law clerk "sat on the opposite couch" when he wanted her to sit next to him.

- At multiple points, Judge Kindred mischaracterized the text messages, including often suggesting that the law clerk initiated certain exchanges and that he tried to avoid them. At one point, Judge Kindred told the Special Committee that he heard "through the grapevine" that the law clerk "ha[d] dramatically and intentionally edited the text messages she may have provided as a basis for these accusations." This is particularly egregious considering that he eventually admitted to the Council most of the conduct

he disputed to the Committee, conduct that was ultimately proven by the messages.

By his own admission, Judge Kindred made false statements when he told the Special Committee multiple times that no sexual interaction occurred with the law clerk at the Airbnb on October 7, 2022. Though the Council acknowledges Judge Kindred's eventual admission regarding the Airbnb sexual encounter, he was candid only when confronted with overwhelming contemporaneous evidence and pointed questioning by the Judicial Council. In fact, Judge Kindred failed to reveal the truth of what occurred at the Airbnb during his oral argument at the start of the Judicial Council meeting. Judge Kindred's oral argument was instead focused on providing context about the difficult circumstances under which he started his judicial career, his role as confidant to court staff and his colleagues, his "fractured" relationships within the court, and the law clerk's dating history, including alluding again to what he characterized as previous accusations she brought against others.

Judge Kindred's propensity to lie extended beyond the sexual misconduct with the law clerk. As stated, during his October 2023 interview with the Special Committee, Judge Kindred was confronted with evidence of inappropriate communications with a separate, more senior AUSA. Despite that evidence, Judge Kindred stated that he did not have a personal, inappropriate relationship with that AUSA and that they never exchanged any inappropriate communications, including inappropriate photographs. At the Judicial Council meeting, confronted again with that contemporaneous evidence, he performed an about-face, stating that he received nude photographs from that senior AUSA and that some flirtation occurred.

Judge Kindred's false or otherwise misleading statements to the Chief Judge, the Special Committee, and the Judicial Council caused a disruption in these proceedings and made it much more difficult for the Special Committee to uncover the truth of what occurred. Judge Kindred's dishonesty impeded the judiciary's ability to conduct an efficient investigation.[18] Because the judiciary is self-

---

[18] Throughout these proceedings, Judge Kindred repeatedly missed internal deadlines set by the Special Committee or the Chief Judge. This required the Special Committee and Office of the Circuit Executive Staff to follow up repeatedly with Judge Kindred to determine whether he intended to submit a response, or whether his silence meant that he did not wish to respond. In all instances, Judge Kindred was granted an extension to submit a response. In addition to his dishonesty, Judge Kindred's lack of clear communication was disruptive to these proceedings.

governing, part of the effective and expeditious administration of the business of the courts is to maintain the public's confidence that the judiciary is adhering to the highest ethical standards, and the JC&D process is an integral component of that endeavor. In trying to keep the Chief Judge, the Special Committee, and the Judicial Council from learning the truth, Judge Kindred obstructed the effective and expeditious administration of the business of the courts. Lying to the Committee represents an egregious breach of judicial ethics. The public and the judiciary expect judges to be honest and truthful, and Judge Kindred has fallen far short of that unambiguous expectation.

> **D.     The evidence does not support a finding that Judge Kindred retaliated against individuals for participating in the misconduct process.**

JC&D Rule 4(a)(4) provides that "cognizable misconduct includes retaliating against complainants, witnesses, judicial employees, or others for participating in this complaint process, or for reporting or disclosing judicial misconduct or disability." Canon 3B(4) also provides that "[a] judge should neither engage in, nor tolerate, workplace conduct that is reasonably interpreted as . . . retaliation for reporting such conduct. The duty to refrain from retaliation includes retaliation against former as well as current judiciary personnel."

The law clerk reported that Judge Kindred told her to "keep your head down and shut the fuck up" when they met later in October 2022, after the two sexual encounters. The law clerk also reported that Judge Kindred joked that he could make her life miserable if she said anything. Similarly, a friend of the law clerk with some knowledge about Judge Kindred's sexual encounters with the law clerk reported that when he met with Judge Kindred about a separate matter, Judge Kindred told him to keep his head down. Judge Kindred denied telling the law clerk to "shut the fuck up," but said that telling the friend to keep his head down was something he might have said.

On review, no evidence lends corroboration to the allegation that Judge Kindred impeded any judicial misconduct reporting. There was no formal investigation or JC&D proceeding involving the law clerk at that time. The investigation did not reveal evidence of Judge Kindred taking retaliatory action, such as interfering with the law clerk's participation in the investigation or her employment prospects.

EXHIBIT A                                                27

Based on the context and this background, we conclude that the evidence does not support a finding of misconduct as it relates to retaliation.

## VII. UNANIMOUS JUDICIAL COUNCIL ORDER

After due consideration of the findings herein, the Judicial Council **ORDERS:**

(1)     That Judge Kindred is publicly reprimanded by the Judicial Council for the conduct described in this order and further admonishes Judge Kindred that his actions violated the Rules of the Judicial Conduct and Disability Act and the Code of Conduct for United States Judges and are prejudicial to the effective and expeditious administration of the business of the courts and the administration of justice.

(2)     That Judge Kindred is requested to resign voluntarily from the position of U.S. District Judge for the District of Alaska.

(3)     That this matter be referred to the Judicial Conference to consider impeachment pursuant to the Certification below.

## VIII. CERTIFICATION

Upon consideration of the Special Committee's report, one of the remedial actions available to the Judicial Council is referral for impeachment. A judicial council must refer a complaint to the Judicial Conference if the council determines that a circuit or district judge may have engaged in conduct that might constitute grounds for impeachment. *See* 28 U.S.C. § 354(b)(2)(A); JC&D Rule 20(b)(2). Article II, § 4 of the Constitution states that "[t]he President, Vice President and all civil Officers of the United States, shall be removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors."

As there is no definition of "high Crimes and Misdemeanors" in the Constitution or by statute, Congress often looks to prior judicial impeachments to inform its definition of "high Crimes and Misdemeanors":

> The House and Senate have both interpreted the phrase broadly, finding that impeachable offenses need not be limited to criminal conduct. Congress has repeatedly

defined "other high Crimes and Misdemeanors" to be serious violations of the public trust, not necessarily indictable offenses under criminal laws....

Thus, from an historical perspective the question of what conduct by a Federal judge constitutes an impeachable offense has evolved to the position where the focus is now on public confidence in the integrity and impartiality of the judiciary. When a judge's conduct calls into questions his or her integrity or impartiality, Congress must consider whether impeachment and removal of the judge from office is necessary to protect the integrity of the judicial branch and uphold the public trust.

H.R. Rep. No. 111-159, *Impeachment of Judge Samuel B. Kent, Report of the Committee on the Judiciary to Accompany H. Res. 520*, 111th Cong., 1st Sess. (2009), at 5-6, 18-19 (hereinafter "Kent Impeachment Report").

False statements made during a JC&D proceeding that were not made under oath may constitute impeachable conduct. The impeachment proceedings relating to Judge Samuel B. Kent are instructive. *See* Kent Impeachment Report at 3 (impeaching Judge Kent for making false statements to the Special Committee about the extent of his unwanted sexual contact with two court employees); *id.* ("Judge Kent was indicted and pled guilty and was sentenced to imprisonment for the felony of obstruction of justice in violation of section 1512(c)(2) of title 18, United States Code, on the basis of false statements made to the Committee. The sentencing judge described his conduct as 'a stain on the justice system itself.'"); *id.* at 18-19 ("As to Judge Kent's false statements to the Fifth Circuit (the basis of his criminal conviction), [Professor] Hellman noted: 'False testimony by a Federal judge in a judicial misconduct proceeding falls easily within the realm of 'high crimes and misdemeanors' that warrant impeachment.'"). Section 1512(c)(2) provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." Section 1512(c)(2) does not require false statements to be made under oath. Additionally, false statements to the Chief Judge, Special Committee, and the Judicial Council may also constitute criminal conduct under 18 U.S.C. § 1001 (providing that falsifying, concealing, or covering up by any trick, scheme, or device a material fact, or making any materially false, fictitious, or fraudulent statements or representations to a federal official about a federal issue constitutes a federal offense).

Judge Kindred did not make false statements because of some lapse in memory. Rather, Judge Kindred admitted that he deliberately misled the Special Committee despite knowing the correct and honest answers. When asked if he lied to the Committee, Judge Kindred responded, "I—I did." Judge Kindred also acknowledged that he was provided multiple opportunities to correct the record but chose not to. Indeed, even after receiving the Special Committee report, which found that Judge Kindred had been dishonest throughout the investigation, Judge Kindred *still* stuck to his false narrative. Judge Kindred misled the Chief Judge, the Special Committee, and the Judicial Council for as long as he could. Only when faced with overwhelming evidence and repeated questioning by the Council did Judge Kindred finally, in a piecemeal fashion, provide the details of his conduct, including what occurred at the Airbnb:

Given these facts, we have no doubt that Judge Kindred, through his false statements, obstructed, influenced, and impeded these JC&D proceedings, or at the very least, attempted to obstruct, influence, or impede these proceedings. The false statements that Judge Kindred has made throughout these proceedings, along with the severity of Judge Kindred's misconduct, may constitute one or more grounds for impeachment.

ACCORDINGLY, pursuant to 28 U.S.C. § 354(b)(2)(A), the Judicial Council of the Ninth Circuit **CERTIFIES** to the Judicial Conference of the United States its determination that United States District Judge Joshua M. Kindred has engaged in conduct, described above, which might constitute one or more grounds for impeachment under Article II of the Constitution.

Together with such determination, the Judicial Council transmits to the Chief Justice of the United States, as presiding officer of the Judicial Conference: (1) the complaint identified by Chief Circuit Judge Murguia; (2) the Special Committee Report; (3) Judge Kindred's Response to the Special Committee Report; (4) the record of proceedings before the Judicial Council; and (5) any other records associated with the proceedings in this matter.

The Judicial Council urges the Judicial Conference of the United States to take expeditious action on this matter pursuant to 28 U.S.C. § 355(b).[19]

---

[19] Pending the Judicial Conference's decision on whether it will certify its determination that consideration of impeachment may be warranted, the Judicial Council retains jurisdiction over this

The Circuit Executive is directed to transmit this Order and Certification to Judge Kindred and the Judicial Conference. The delivery of copies of this Order and Certification will constitute notice to Judge Kindred of action taken under 28 U.S.C. § 354(b)(2)(A). This Order shall be made publicly available consistent with 28 U.S.C. § 360(b) and JC&D Rule 23(b)(8). The Special Committee's report and other materials related to this matter shall remain confidential pursuant to 28 U.S.C. § 360(a).

Judge Kindred is reminded that the JC&D Rules prohibit retaliation against witnesses, judicial employees, or others for participating in the judicial misconduct process or for reporting or disclosing judicial misconduct or disability. Until the Judicial Conference makes its determination in response to this Order and Certification, Judge Kindred is also reminded that if any of his employees raise issues similar in nature to those raised in this complaint, there are procedures in place, including procedures established by the Employment Dispute Resolution Plan and the Office of Workplace Relations, that should dictate any response.

**IT IS SO ORDERED.**

---

matter. In the event the Judicial Conference does not make such a certification, the Judicial Council may revisit whether additional remedial action may be warranted.

Jud



## JUDICIAL CONFERENCE OF THE UNITED STATES

WASHINGTON, D.C. 20544

THE CHIEF JUSTICE
OF THE UNITED STATES
*Presiding*

HONORABLE ROBERT J. CONRAD, JR.
*Secretary*

September 12, 2024

Honorable Mike Johnson
Speaker
United States House of Representatives
Washington, DC 20515

Dear Mr. Speaker:

At a special session held on September 10, 2024, the Judicial Conference of the United States by its members present determined, upon recommendation of its Committee on Judicial Conduct and Disability, to transmit the enclosed Certificate and record of proceedings in a judicial misconduct matter to the House of Representatives in accordance with 28 U.S.C. § 355(b)(1).

The Certificate is a "determination" within the meaning of the following provision in section 355(b)(1): "Upon receipt of the determination and record of proceedings in the House of Representatives, the Clerk of the House of Representatives shall make available to the public the determination and any reasons for the determination." The Judicial Conference will make no public statement on this matter, but will transmit the Certificate to the individual who is the subject of the determination and to the chair of the Judicial Council of the Ninth Circuit.

Sincerely,

Robert J. Conrad, Jr.
Secretary

Enclosures

cc:    Honorable Jim Jordan
       Honorable Jerrold Nadler

EXHIBIT B

1



# JUDICIAL CONFERENCE OF THE UNITED STATES

WASHINGTON, D.C. 20544

THE CHIEF JUSTICE
OF THE UNITED STATES
*Presiding*

HONORABLE ROBERT J. CONRAD, JR.
*Secretary*

## CERTIFICATE

### TO THE SPEAKER, UNITED STATES HOUSE OF REPRESENTATIVES:

Pursuant to 28 U.S.C. § 355(b)(1), the Judicial Conference of the United States certifies to the House of Representatives its determination that consideration of impeachment of former United States District Judge Joshua M. Kindred (D. Alaska) may be warranted. This determination is based on evidence provided in the Report of the Special Committee to the Judicial Council of the Ninth Circuit and the unanimous Order and Certification of the Circuit Judicial Council.

The Constitution entrusts impeachment of public officials to Congress. But the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-64, creates a distinct role for the Judiciary in the impeachment process. The Act mandates a process through which the Judicial Conference and its members identify and investigate allegations of misconduct by judges. However, there may be considerations relevant to impeachment of other officers outside the Judicial Branch that are different from those faced by the Judiciary under the Act.

In a case with less egregious conduct, the Judicial Conference may decide that resignation obviates the need for certification. However, given the severity of the misconduct outlined below, together with a finding of dishonesty, the Judicial Conference believes that certification of this matter "to the House of Representatives for whatever action the House of Representatives considers to be necessary" is appropriate. 28 U.S.C. § 355(b)(1).

The Judicial Conference also recognizes that, given Judge Kindred's resignation, Congress may decline to pursue impeachment. In the event that the House of Representatives determines in its sound discretion that impeachment is not warranted, this certification may also serve as a public censure of Judge Kindred's reprehensible conduct, which has no doubt brought disrepute to the Judiciary and cannot constitute the "good behavior" required of a federal judge.

The determination is based on substantial evidence provided in the Order and Certification issued by the unanimous Ninth Circuit Judicial Council, that:

(a) Judge Kindred created a hostile work environment for his law clerks by

engaging in unwanted, offensive, and abusive sexual conduct, including sexual harassment, and treating the law clerks in a demonstrably egregious and hostile manner.

(b) Judge Kindred engaged in misconduct by having an inappropriately sexualized relationship with one of his law clerks during her clerkship and shortly after her clerkship while she practiced as an Assistant United States Attorney in the District of Alaska.

(c) Judge Kindred made false and misleading statements to the Chief Judge of the Ninth Circuit, the Special Committee, and the Judicial Council throughout these proceedings which impeded the judiciary's ability to conduct an efficient investigation. These false statements, in combination with the actions outlined in (a) and (b), contributed to the overall determination that Judge Kindred's conduct may constitute grounds for impeachment.

(d) The conduct described in (a)–(c) has individually and collectively brought disrepute to the federal Judiciary.

Executed this 10th day of September, 2024.

Robert J. Conrad, Jr.
Secretary

**EXHIBIT B**

3

BEFORE THE ALASKA BAR ASSOCIATION
AREA HEARING COMMITTEE
THIRD JUDICIAL DISTRICT

EXHIBIT

tabbies®

B

In the Disciplinary Matter )
Involving )
 )
 JOSHUA M. KINDRED, )
 Respondent. )
 )
_____ )

ABA File No. 2024D147
ABA Member No. 0511105

ALASKA BAR ASSOCIATION
Filed and Entered on

MAR 13 2025

Pursuant to the Rules of
Disciplinary Enforcement
Received By_____

## ORDER DEEMING CHARGES ADMITTED

The Executive Director of the Alaska Bar Association, acting as Clerk

of the Disciplinary Board in this disciplinary matter pursuant to Alaska

Bar Rule 14(6), having determined that respondent has failed to answer

the Petition for Formal Hearing within the time prescribed, hereby orders

that the charges contained in the petition are DEEMED ADMITTED

pursuant to Alaska Bar Rule 22(e).

DATED this 13th day of March, 2025, at Anchorage, Alaska.

ALASKA BAR ASSOCIATION

Danielle Bailey
Executive Director
Clerk of the Disciplinary Board

G:\Ds\DISC CASES\2024\2024D147\PFFH\Clerk\Order Deeming Charges Admitted.DOC

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510

(907) 272-7469
FAX (907) 272-2932

## BEFORE THE ALASKA BAR ASSOCIATION
## AREA HEARING COMMITTEE
## THIRD JUDICIAL DISTRICT

In the Disciplinary Matter )
Involving )
)
    JOSHUA M. KINDRED, )
    Respondent. )
_____ )

ABA File No. 2024D147
ABA Member No. 0511105

## CERTIFICATE OF SERVICE

GAIL WELT, Assistant Disciplinary Board Clerk for the Alaska Bar Association, 840 K Street, Suite 100, Anchorage, Alaska 99501, certifies that on March 13, 2025, at the direction of the Executive Director, she caused to be served, via mail and email, a full, true and correct copy of: **ORDER DEEMING CHARGES ADMITTED**, and this **CERTIFICATE OF SERVICE** filed in the above action on:

U.S. MAIL & EMAIL
Joshua Kindred
12299 Timberwood Circle
Anchorage, AK 99516
joshuakindred@gmail.com

HAND DELIVERY
Louise R. Driscoll
Assistant Bar Counsel
Alaska Bar Association
840 K Street, Suite 100
Anchorage, AK 99501

U.S. MAIL
Joshua M. Kindred
804 W. 10th Avenue
Anchorage, Ak 99501

DATED this 13th day of March, 2025.

_____
Gail Welt

G:\Ds\DISC CASES\2024\2024D147\PFFH\Clerk\AOS - Charges Deemed Admitted.docx

**ALASKA BAR ASSOCIATION**
BOX 100279
ANCHORAGE, ALASKA 99510

(907) 272-7469
FAX (907) 272-2932

EXHIBIT

C

BEFORE THE ALASKA BAR ASSOCIATION
AREA HEARING COMMITTEE
THIRD JUDICIAL DISTRICT

In the Disciplinary Matter )
Involving )
)
JOSHUA M. KINDRED, )
)
Respondent. )
_____ )
ABA File No. 2024D147
ABA Member No. 0511105

ALASKA BAR ASSOCIATION
Filed and Entered on

**JUN 1 3 2025**

Pursuant to the Rules of
Disciplinary Enforcement
Received By*Jan Donelly.*
*For  Danielle Bailey*

## ALASKA BAR ASSOCIATION'S SANCTIONS MEMORANDUM

Introduction

On March 13, 2025, the Disciplinary Board Clerk ordered charges

of misconduct in the Petition for Formal Hearing admitted as a result of

respondent attorney Joshua M. Kindred's failure to answer the charges.

This Area Hearing Committee was convened to conduct a sanctions

hearing to allow the Committee to take argument pertaining to the

discipline recommendation.  The sanctions hearing is not an opportunity

for Mr. Kindred to challenge the findings of misconduct.[1] Since it has

been established that Mr. Kindred has committed misconduct, the

Committee's sole task is to recommend to the Disciplinary Board the

extent of the final discipline to be imposed.

---

[1] *See In re Triem,* 929 P.2d 634, 645 (Alaska 1996).

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501

(907) 272-7469
FAX (907) 272-2932

In the Disciplinary Matter Involving Joshua M. Kindred
ABA's Sanctions Memo – ABA File No. 2024D147

Page 1 of 9

At the June 5, 2025, pre-hearing conference, the Area Hearing Committee requested Assistant Bar Counsel Louise R. Driscoll to submit a sanctions memorandum to assist the Committee. The Bar's memorandum demonstrates that based on the persistence and the scope of Mr. Kindred's disciplinary breaches, disbarment is warranted.

<u>Facts pertaining to the Misconduct</u>

The charges in the Petition for Formal Hearing describe the misconduct, summarizing the more detailed information provided in Order No. 22-90121 and Certification of the Judicial Council of the Ninth Circuit, attached as Exhibit A to the Petition. The Judicial Council's Order was issued after review and consideration of a 1,144-page report, inclusive of exhibits, issued by a Special Committee convened to investigate the charges of misconduct. The Special Committee reviewed more than 700 pages of text messages between Kindred and his law clerks. The text messages were often vulgar, of a sexual nature, and lacking any connection to actual clerk duties. The Special Committee interviewed 21 individuals, including former court staff, attorneys and Kindred.

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501

(907) 272-7469
FAX (907) 272-2932

The Special Committee found, and the Judicial Council agreed, that Kindred behaved inappropriately with his law clerks and then lied about it multiple times during the investigation.

*Count One Rule 8.1(a) Bar Admission and Disciplinary Matters*

During a disciplinary investigation, ARPC 8.1(a) requires that a lawyer not "knowingly make a false statement of material fact." Kindred breached Rule 8.1(a) when he deliberately misled the Special Committee and lied repeatedly during its investigation. When Kindred appeared before the Judicial Council on April 5, 2024, Kindred, after being questioned under oath, admitted that he had lied to the Special Committee throughout the investigation.

*Count Two Rule 8.4(c) Misconduct*

ARPC 8.4(c) mandates that a lawyer not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer's fitness to practice law." Kindred deliberately misled the Special Committee during its investigation, lied to the Special Committee and Judicial Council, and ignored multiple opportunities to correct his dishonesty. His conduct demonstrated Kindred's failure to maintain a standard of integrity required of lawyers.

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501

(907) 272-7469
FAX (907) 272-2932

In the Disciplinary Matter Involving Joshua M. Kindred
ABA's Sanctions Memo – ABA File No. 2024D147                    Page 3 of 9

*Count Three 8.4(f) Misconduct*

The Committee's investigation found that Kindred created a hostile chambers environment for his law clerks by flouting the standards of behavior that a judge should employ and by "treating the law clerks in a demonstrably egregious and hostile manner."[2] He subjected clerks to abusive sexual conduct. He lacked any filter on the topics he discussed with his clerks and often used vulgar, unprofessional language in his communication with clerks. He belittled a clerk who addressed Kindred about his inappropriate behavior. Kindred violated ARPC 8.4(f) by engaging in "unwanted, offensive, and abusive sexual conduct." His conduct did not promote a civil and respectful workplace, free of harassment.

## Sanctions Analysis

To determine the appropriate sanction for Kindred's misconduct, the committee should consider the following factors from the American Bar Association Standards for Imposing Lawyer Sanctions::

1. the duty violated;

2. the lawyer's mental state; and,

---

[2] Committee on Judicial Conduct and Disability of the Judicial Conference of the United States, Memorandum of Decision at 3.

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501

(907) 272-7469
FAX (907) 272-2932

3. the actual or potential injury caused by the lawyer's misconduct.

After the committee determines the recommended sanction based on the above factors, it may determine the applicability of aggravating or mitigating factors.[3]

*Duty Violated*

When Kindred repeatedly lied to the Special Committee and Judicial Council, he impaired the effective and expeditious administration of the court's business, a breach of duties to the legal system. Kindred violated duties to the public when he failed to maintain personal honesty and integrity. Kindred breached duties to the profession when he engaged in false and misleading communication that hindered the Special Committee's investigation and the Judicial Council proceedings. When Kindred created and continued to foster a hostile work environment in his chambers, he violated duties owed to the legal system which expects a lawyer to demonstrate standards of personal integrity.

---

[3] In re Buckalew, 731 P.2d 48 (Alaska 1986)

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501

(907) 272-7469
FAX (907) 272-2932

In the Disciplinary Matter Involving Joshua M. Kindred
ABA's Sanctions Memo – ABA File No. 2024D147                    Page 5 of 9

*The Lawyer's Mental State*

Kindred acted intentionally when he had a sexual relationship with his law clerk. During the investigation, Kindred intended to mislead, deflect and lie to the Special Committee and the Judicial Council about the sexual relationship with his law clerk. He knowingly sent a vast number of texts, many which had little bearing on the job, but instead exhibited a lack of professionalism and seemed to encourage an Animal House atmosphere in chambers.

*Actual or Potential Injury*

By lying to the Special Committee, Kindred undermined the integrity of the adjudicative process and eroded trust in the judiciary. U.S. District Court judges are expected to be honest and to maintain the standards of personal integrity upon which the community relies. The hostile work environment created a personal and professional toll on multiple clerks. Kindred did not conform his conduct to what is expected of a layperson, let alone a judge. The effective administration of justice relies on public confidence that lawyers will act with respect for the law and legal processes, and for other persons within the justice system.

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501
(907) 272-7469
FAX (907) 272-2932

In the Disciplinary Matter Involving Joshua M. Kindred
ABA's Sanctions Memo – ABA File No. 2024D147

Page 6 of 9

In sum, under the ABA Standards, Kindred's failure to maintain personal integrity through intentional conduct involving dishonesty, deceit, and misrepresentation merits disbarment.[4] Kindred's intentional falsehoods and lack of honesty directly impacts his ability to practice law and to be a competent member of the profession.[5] Kindred's wrongdoing merits disbarment. Finally, Kindred's creation of a hostile work environment that subjected staff to unwanted, offensive and abusive sexual conduct and harassment merits disbarment.

After considering the ABA Standards, the Committee should consider the application of aggravating and mitigating factors set out in the ABA Standards. The following aggravating facts apply in this matter.

- Dishonest or selfish motive. (0.33)b));

- A pattern of misconduct. (9.22(c));

- Multiple offenses. (9.22(d));

- Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or order of the disciplinary agency. (9.22(f));

- Substantial experience in the practice of law. (9.22(i)) (Kindred was admitted in 2005).

---

[4] ABA Standards 5.0.
[5] ABA Standard 6.0.

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501

(907) 272-7469
FAX (907) 272-2932

Kindred's absence of a prior disciplinary record may be considered a mitigating factor. However, this single mitigating factor is insufficient to offset the many aggravating factors that apply.

Alaska Case Law

After considering the ABA Standards, sanctions are evaluated in light of other cases and authorities. *In re Ivy* 374 P.3d 374 (Alaska 2016) (The Court disbarred Ivy for false testimony in civil and disciplinary matters); *In re Purdy*, (Supreme Court No. S-08996 (order of 3/26/99)( to avoid penalties, lawyer forged documents of title to her car, falsely notarized them using another's notary seal, and testified falsely to a hearing officer about the transfer; five year suspension, by stipulation); *In re Kellicut,* Supreme Court No. S-14876 (order of 11/26/12)(lawyer fabricated addendum to his own prenuptial agreement, forged wife's signature, filed document with court, and submitted false discovery about it; disbarred after formal proceedings.)

Conclusion

The findings of the Judicial Council of the Ninth Circuit are supported by competent, substantial evidence in the record. This Committee should consider that Kindred's failure to challenge findings of facts, the Judicial Council recommendations, and his failure to

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501

(907) 272-7469
FAX (907) 272-2932

participate in Bar disciplinary proceedings support the Bar's belief that only by recommending disbarment can the public have confidence in the integrity of the discipline process and confidence in the legal system.

DATED at Anchorage, Alaska, this 13th day of June, 2025.

ALASKA BAR ASSOCIATION

By: _____
Louise R. Driscoll
Assistant Bar Counsel
Bar Member No. 8511152

Alaska Bar
Association
840 K Street, Suite 100
Anchorage, Alaska
99501

(907) 272-7469
FAX (907) 272-2932